**ZIMMERMAN REED LLP**
Ryan Ellersick (SBN 357560)
ryan.ellersick@zimmreed.com
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781

**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
500 7th Avenue, 8th Fl.
New York, NY 10018
(646) 347-3940

***Attorneys for Plaintiff and the Proposed Class***

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MELISSA WEISMAN, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

TRIBAL NUTRITION LLC D/B/A KA'CHAVA,

Defendant.

Case No. '26CV0184 WQHMSB

**CLASS ACTION COMPLAINT**

1. Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.
2. Violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.
3. Violations of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.
4. Unjust Enrichment

DEMAND FOR JURY TRIAL

Plaintiff Melissa Weisman ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this class action suit for damages and equitable relief against Tribal Nutrition LLC d/b/a Ka'Chava ("Ka'Chava" or "Defendant"). Plaintiff alleges the following based upon personal information as to allegations regarding herself, and on her own investigation, on the investigation of her counsel, or on information and belief as to all other allegations:

## NATURE OF THE ACTION

1. This is a class action arising from Defendant's false and misleading marketing of Ka'Chava All-In-One Nutrition Shakes ("the Shakes").




2. Defendant manufactures, markets, and sells the Shakes nationwide through its own website, Ka'Chava.com, and through major retailers and e-commerce platforms, including Amazon, Whole Foods, Target, The Vitamin Shoppe, Costco, Woot, Thrive Market, and Sprouts Farmers Market.

3. Defendant represents that the Shakes contain "everything" the body needs, including all essential nutrients, vitamins, minerals, and macronutrients, and that they can function as a "complete meal."

4. These representations are false and misleading. The Shakes lack essential nutrients, provide insubstantial amounts of certain macronutrients and calories, and cannot function as a complete or comprehensive meal as marketed.

5. A single Shake provides only 7% of the Daily Value of carbohydrates, 8%

of the Daily Value of total fat, and just 240 calories. Even consuming *five* Shakes per day would deliver only a fraction of recommended macronutrients (35% of the Daily Value of carbohydrates and 40% of the Daily Value of fat) and still result in total daily calories below levels generally advised by medical professionals (which caution against sustained intake below 1,200 calories per day for women or 1,500 calories per day for men).

6. Defendant's false and misleading statements caused Plaintiff and members of the proposed classes to pay a price premium for the Shakes. Had they known the truth, Plaintiff and members of the proposed classes would not have purchased the Shakes or would have paid significantly less.

7. Plaintiff, individually, and on behalf of all others situated, hereby seeks restitution, injunctive relief, punitive damages, attorney's fees, and all other relief which the Court may deem appropriate for violating the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; and the common law prohibition on unjust enrichment.

**PARTIES**

8. Plaintiff Melissa Weisman is a natural person and a resident of San Diego, California. Plaintiff purchased one order of the Shakes from Woot.com in September 2024. Plaintiff relied on Defendant's representations regarding the Shakes' nutritional content and completeness and would not have purchased it, or would have paid less, had she known the truth.

9. Defendant Tribal Nutrition LLC d/b/a Ka'Chava is a Nevada corporation with its principal place of business at 701 S Carson St Ste 200, Carson City, NV 89701.

**JURISDICTION & VENUE**

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) and the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members

of the proposed Classes exceeds 100; and many members of the proposed Classes are citizens of different states than Defendant.

11. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in California, markets and sells the Shakes to California consumers, and a substantial portion of the conduct giving rise to Plaintiff's claims occurred in this state.

12. Defendant is also subject to personal jurisdiction in California because it manufactures the Shakes in Southern California and purposefully avails itself of the California market.[1]

13. Venue is proper in this District because Plaintiff resides in this District and Defendant's acts and practices giving rise to the claims occurred, at least in part, within this District.

## FACTUAL ALLEGATIONS

14. Founded in 2014, Defendant positions itself as a nutrition-focused company with a stated mission to "elevate health" by "sourc[ing] the most nutrient-dense ingredients earth has to offer and combin[ing] them into comprehensive, holistic, and downright delicious shakes."[2] The Shakes come in a variety of flavors, including Chocolate, Strawberry, and Vanilla, and are distributed widely through Defendant's own website and major retailers, including Amazon, Whole Foods, Target, the Vitamin Shoppe, Costco, Woot, Thrive Market, and Sprouts Farmers Market.

15. Defendant markets the Shakes as a solution for consumers who lack the time to plan, prepare, or consume balanced meals. Defendant also promotes the Shakes as a convenient way to maintain health despite a busy or demanding lifestyle. As Defendant explains, "Eating healthy is hard work," and Ka'Chava exists "to help people stay on top

---

[1] https://support.kachava.com/hc/en-us/articles/360045546672-Is-Ka-Chava-made-in-the-U-S-A

[2] https://www.prnewswire.com/news-releases/kachava--jess-sims-a-powerful-partnership-celebrating-whole-body-health-302269395.html

of their health no matter how busy or how demanding their life is."[3]

16. These representations have been commercially successful. Defendant generates millions of dollars from the sale of the Shakes, with a reported $5.9 million in annual revenue.[4]

17. Recognizing customers' desire to "stay on top of their health," Defendant markets the Shakes for their purported nutritional completeness. Across its packaging, advertising, and promotional materials, Defendant repeatedly represents that the Shakes are "all-in-one," contain "everything" the body needs, and can function as a complete or comprehensive meal. These representations form the basis of the deceptive conduct described below.

## I. Defendant Markets the Shakes as "All-In-One" and Complete

18. Defendant consistently markets the Shakes as "All-In-One Nutrition Shakes." The "all-in-one" claim appears prominently and repeatedly across packaging and online advertising, and serves as a central theme of Defendant's branding and messaging.

19. Defendant places the "all-in-one" representation directly on its product packaging:

[3] https://www.facebook.com/watch/?v=2373004892942742

[4] https://www.zoominfo.com/c/kachava/359515445




20. Defendant reinforces this message through its title tags and meta descriptions in Google search results:




21. Defendant repeats the "all-in-one" claim in paid social media advertising:




22. Defendant uses the same representation in its email marketing campaigns:

23. Defendant extends these claims to third-party commerce platforms,



including major retailers like Target and Woot:







24. "What is an all-in-one shake?" Defendant explains: "Imagine gathering **all the essential nutrients, vitamins, minerals, & macros** your body craves and squeezing them into your blender. Ka'Chava is like that – only way easier. One **comprehensive** meal to nourish all of you."[5] (*emphasis added.*)

25. Defendant has long tied "all-in-one" to the provision of all essential nutrients. In "shar[ing] the story behind Ka'Chava and why [he] began the journey to create the most nutrient-dense superfood shake imaginable," founder and CEO Simon Malone explains one of the original goals of Ka'Chava: "We wanted a meal that [ ]

[5] https://www.amazon.com/KaChava-Nutrition-Chocolate-Superfoods-Plant-Based/dp/B071NR9YLW/

provided **all of our essential nutrients**[.]"[6] (*emphasis added.*)

26. Defendant's fixation on the "all-in-one" claim extends to other, synonymous and concrete language, including its description of the Shakes as "one comprehensive meal."

27. In search results for "Ka'Chava Shakes," Defendant advertises the product as "The World's Healthiest Shake" and "The All-In-One Nutrition Shake. All the best superfoods in a shake. Blend of organic superfoods & plant-based proteins. Cleanest & most nutrient dense."




28. Defendant emphasizes that the Shake "isn't just protein or a meal replacement shake, it's everything," while simultaneously asserting that consumers can "get [their] macros (Protein, Fat, and Carbohydrates) and enjoy it too!"[7]

---

[6] https://www.facebook.com/watch/?v=2373004892942742

[7] *See, e.g.*, https://www.woot.com/offers/kachava-vanilla-all-in-one-shake-blend-2-lb; https://us.amazon.com/KaChava-Nutrition-Superfoods-Nutrients-Plant-Based/dp/B0CFPSN288



- All-in-One Nutrition Shake Blend made with 85+ Superfoods, nutrients, and plant-based ingredients.
- Ka'Chava isn't just protein or a meal replacement shake, it's everything. Well, not everything. There's no soy, no animal products, no gluten, no GMOs, no preservatives, no artificial flavors, colors or sweeteners. And no stevia. Basically, you can get your macros (Protein, Fat, and Carbohydrates) and enjoy it too!
- Ingredients include: Vitamins, Minerals + Electrolytes, Adaptogens, Complete Plant Protein, Superfruits + Berries, Omegas + MCTs, Greens + Vegetables, Digestive Enzymes, Probiotics + Prebiotic Fiber, and Functional Mushrooms.
- From head to toe, Ka'Chava has you covered. Our unrivaled blend of superfoods and nutrients supports: Immunity, Energy, Digestion & Gut Health, Muscle Growth & Recovery, Mind & Mood, Weight & Metabolism, Heart Health, Joints & Bones, and Hair, Skin & Nails.

*Ka'chava product page on Woot.com*

29. Defendant further markets the Shakes as "A Complete Meal in Seconds" that "[k]eeps you full for hours."[8]




[8] *See, e.g.*, https://www.kachava.com/products/shakes/chocolate

30. On its Amazon product pages, Defendant promises that it provides "[e]verything your body craves in one delicious shake."[9]




31. In its social media advertisements, Defendant characterizes the Shakes as a "GLP-1 Nutrition Solution," by which it means that the Shakes provide "[a]ll the essentials in one shake," including "Vitamins + Minerals."

[9] https://www.amazon.com/KaChava-Nutrition-Chocolate-Superfoods-Plant-Based/dp/B071NR9YLW/




32. Taken together, Defendant's "all-in-one" and related representations convey a clear and consistent message: that Shakes provide all essential nutrients, obviating the need to seek essential nutrients elsewhere, and can meaningfully replace a full meal.

**II. Defendant's "All-In-One" Representations Are Deceptive**

33. Defendant represents that the Shakes provide all essential nutrients, vitamins, and minerals and function as a complete meal. They do not.

34. In reality, the Shakes omit essential nutrients and provide only minimal amounts of key macronutrients and calories, all of which are fundamental to any product marketed as a complete or comprehensive meal.

35. The FDA recognizes 28 essential nutrients, including Vitamin K and choline. *See Questions and Answers on FDA's Fortification Policy* § III(C)(1), ("[t]he term 'essential nutrient' under the fortification policy refers to the vitamins and minerals assigned Reference Daily Intakes (RDIs) listed in 21 C.F.R. § 101.9(c)(8)(iv).)" *See also* 21 C.F.R. § 101.9(c)(8)(iv) (identifying vitamins and minerals that "are essential in

human nutrition”). Defendant defines its “all-in-one” Shakes as providing “all the essential nutrients, vitamins, [and] minerals.” But that representation is false. The Shakes contain neither Vitamin K nor choline, two essential nutrients.

36. Vitamin K, “a nutrient that the body needs to stay healthy,” is essential to basic physiological functions.[10] It is necessary for blood coagulation because it enables the body “to make certain proteins in the liver that cause blood to clot.”[11] Vitamin K also plays a critical role in bone health by “activat[ing] a protein that helps build bone and bind minerals, such as calcium, to the bone structure.”[12]

37. Choline is also “an essential nutrient” that “all plant and animal cells need [ ] to preserve their structural integrity.”[13] Choline “play[s] a significant role in human neurodevelopment,”[14] and is involved in core biological processes, including cell structure, cell messaging, fat transport and metabolism, DNA synthesis, and a healthy nervous system.[15] Despite its importance to these foundational processes, “[m]any people are not meeting the recommended intake for this nutrient.”[16]

38. A reasonable consumer would take Defendant at its word and understand that the Shakes contain “all essential nutrients,” including Vitamin K and Choline. Defendant could have described the Shakes as providing *many* or *most* essential nutrients. It did not. Instead, it chose the more sweeping claim “all,” a claim the product itself cannot support.

39. Defendant’s deceptive marketing extends beyond comments on micronutrients. Defendant represents that its Shakes provide “everything” a body needs,

---

[10] https://ods.od.nih.gov/factsheets/VitaminK-Consumer/

[11] https://medlineplus.gov/ency/article/002407.htm

[12] https://osteoporosis.ca/vitamin-k/

[13] https://ods.od.nih.gov/factsheets/Choline-HealthProfessional/

[14] https://www.bbc.com/future/article/20250408-choline-the-underappreciated-nutrient-thats-vital-for-our-brains

[15] https://www.healthline.com/nutrition/what-is-choline

[16] *Id.*

including "all macro[nutrients]" and even asserts that Shakes constitute a "complete meal" that "[k]eeps you full for hours" at a time. Those representations communicate to reasonable consumers that a single serving of the Shakes provides sufficient macronutrients and calories to replace a full meal. As with Defendant's other claims about the Shakes, this is false and misleading.

40. In context, "all macros" conveys to consumers that the Shakes contain meaningful, balanced amounts of carbohydrates and fat. The Shakes' Nutrition Facts panel tells a different story. A single Shake (one serving) provides only 7% of the Daily Value of carbohydrates and 8% of the Daily Value of total fat.[17] Even if a consumer drank *five* Shakes per day, that would yield only 35% of the Daily Value of carbohydrates and 40% of the Daily Value of fat. These figures are inconsistent with a reasonable understanding of "all macros."

41. Despite being marketed as a "complete" or "comprehensive" meal, one Shake contains just 240 calories. For an average adult, that amount bears little resemblance to a meal. Recommended daily caloric intake is approximately 2,000 to 2,500 calories, depending on sex.[18] Those looking to lose weight are typically advised to eat between 1,400 to 1,900 calories a day.[19] "However, calorie intake should not fall below 1,200 a day in women or 1,500 a day in men, except under the supervision of a health professional."[20] Even if a customer drank *five* Shakes a day, they would still be consuming fewer calories than is medically advisable.

42. Defendant's macronutrient and caloric claims therefore reduce to a labeling sleight of hand. Consumers seeking comprehensive and complete macronutrient intake

---

[17] This is true for the Chocolate, Vanilla, Chai, Matcha, and Coconut Acai flavors. Nutrition facts for the Strawberry Shake show 8% of the Daily Value for carbohydrates and 6% of the Daily Value for total fat. *See* https://www.kachava.com/products/shakes/strawberry.

[18] https://www.nhs.uk/better-health/lose-weight/calorie-counting/

[19] *Id.*

[20] https://www.health.harvard.edu/staying-healthy/calorie-counting-made-easy

would be misled by Defendant's representations. At those macronutrient and calorie levels, a product marketed as a meal replacement cannot reasonably function as a "complete" or "comprehensive" meal.

43. Comparable products marketed as meal replacements typically contain substantially more calories per serving than the Shakes, reflecting ordinary consumer expectations of what a meal entails. "[A]t 240 calories per serving," the Shakes are "low for a meal replacement, covering just 12% of the recommended daily caloric intake. Comparable options like Soylent and Huel offer around 400 calories per meal, making them more substantial for meal replacement purposes."[21]

44. The overall effect of Defendant's "all-in-one" marketing is to project a nutritional completeness that does not exist.

45. Specifically, Defendant's comments imply that the Shakes contain micronutrients that they do not have and contain sufficient macronutrients and calories to replace a meal when, even if a customer drank five Shakes a day, they would not meet their daily recommended levels of macronutrients or calories. Defendant's "all-in-one," "all essential nutrients, vitamins, minerals, & macros," and "complete meal" representations therefore materially mislead reasonable consumers about the Shakes' nutritional content and function as a meal replacement.

## III. Defendant Commands a Price Premium Based on These Misrepresentations

46. Across packaging, marketing, and advertising, Defendant consistently promotes the Shakes as an "all-in-one" product that contains "everything," including "all the essential nutrients, vitamins, minerals, & macros" a body needs. Defendant also consistently claims that the Shakes function as a "complete meal in seconds"—a "comprehensive meal to nourish all of you." Nowhere does Defendant disclose that the Shakes actually lack key nutritional components, including essential nutrients, or provide insufficient amounts of macronutrients and calories to replace a meal.

[21] https://www.topnutritioncoaching.com/blog/kachava-review

47. Defendant directs this marketing toward consumers who lack the time to plan or prepare balanced meals, telling consumers that Shakes are a convenient substitute for eating healthy and, in doing so, positioning itself as a source of nutritional authority. Defendant affirmatively defines "all-in-one" to mean "all the essential nutrients, vitamins, minerals, & macro[nutrients]". In Defendant's own words, "all-in-one" means the Shake provides "everything".

48. Defendant's misleading claims about the nutritional make-up and capabilities of its "all-in-one" shakes drive sales and allow Defendant to command a substantial price premium. Consumers are willing to pay more for products that promise total nutritional coverage, especially those that claim to contain all essential nutrients, vitamins, minerals, macronutrients, and a complete meal.

49. Defendant's pricing reflects that premium. A one-time purchase of a 15-serving bag of the Shakes costs $69.95, or $4.66 per serving. By comparison, Huel prices its "Complete High-Protein Powder Meal" at $56.30 for a 17-serving bag, or $3.31 per serving,[22] and Happy Viking sells its "High Protein Meal" in a 15-serving bag for $60.00, or $4.00 per serving.[23]

50. This inflated price is not attributable to higher manufacturing costs or a demonstrably superior nutritional make-up. Notably, Huel's Black Edition contains Vitamin K and choline—nutrients that Defendant's Shakes lack—and provides substantially more calories, carbohydrates, and fat per serving. Rather, this inflated price stems from Defendant's marketing strategy. By marketing the Shakes as "all-in-one," Defendant induces consumers to pay for nutritional effects the Shakes cannot deliver. Consumers therefore did not receive the benefit of their bargain. They paid a premium for a product marketed as delivering "all-in-one" nutrition, despite the Shakes' inability to deliver on this promise. Consumers were misled into overpaying for a product they reasonably believed would address dietary, health, or personal needs it cannot address.

[22] https://huel.com/products/huel-black-edition

[23] https://drinkhappyviking.com/products/complete-plant-superfood-nutrition?

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this lawsuit as a class action under Federal Rule of Civil Procedure 23.

52. Plaintiff brings this action on behalf of herself and on behalf of the following Classes, initially defined as follows:

> **Nationwide Class**: All persons in the United States who purchased the Shakes for personal, family, or household purposes within the applicable statute of limitations.

> **California Subclass**: All persons in California who purchased the Shakes for personal, family, or household purposes within the applicable statute of limitations.

53. Excluded from each Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

54. Plaintiff reserves the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

55. The claims of all class members derive directly from a single course of conduct by Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the class members.

56. Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

57. Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

58. Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule

23(c)(4) of the Federal Rules of Civil Procedure.

59. **Numerosity** (Fed. R. Civ. P. 23(a)(1)): The members of the proposed Class are so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes tens of thousands, if not hundreds of thousands of members.

60. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)): Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

a) Whether Defendant engaged in the conduct alleged in this Complaint;
b) Whether Defendant violated the applicable statutes alleged herein;
c) Whether Plaintiff and the class members are injured and harmed directly by Defendant's conduct; and
d) Whether Plaintiff and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts.

61. **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)): The claims of the Plaintiff and the respective Classes are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiff and Classes. Plaintiff and all class members are similarly affected by Defendant's wrongful conduct and were damaged in the same way. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members. Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

62. **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)): Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the class members, and she has retained counsel competent and experienced in complex class actions, mass arbitrations, and consumer litigations. Plaintiff and her counsel will fairly and adequately protect the interest of the class members.

63. **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)): A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation, the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

64. **Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(2)): In the alternative, this action may properly be maintained as a class action, because:

a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

c) Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding

declaratory relief with respect to the Class as a whole.

**TOLLING**

65. Any applicable statute of limitations is tolled under the "delayed discovery" rule. Plaintiff had no knowledge—nor any reasonable means of discovering—the truth behind Defendant's false and misleading marketing scheme.

**COUNT I**

**Violations of California's Unfair Competition Law ("UCL")**

**Cal. Business & Professional Code § 17200 *et seq.***

**(By Plaintiff Weisman, individually and on behalf of the California Subclass)**

66. Plaintiff Weisman incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

67. California Business & Professions Code, sections 17200, *et seq*. (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

68. Defendant's false and misleading advertising claims regarding the Shakes violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

69. First, Defendant's representations and omissions regarding the Shakes are unlawful because they are misleading to a reasonable consumer and violate the CLRA and FAL, as alleged herein.

70. Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the Shakes are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

71. Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

72. Plaintiff reasonably relied on Defendant's representations and omissions.

The representations and omissions were material because a reasonable consumer would consider the Shakes' nutritional content and completeness important factors in deciding whether to purchase the Shakes. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the Shakes.

73. As a direct and proximate result of Defendant's violations of the UCL, Plaintiff and the California Subclass have suffered injury in fact and have lost money. Plaintiff and the California Subclass paid an unwarranted premium for the Shakes and/or were denied the benefit of the bargain.

74. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the Shakes or would have paid substantially less for them.

75. Plaintiff seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the Shakes have no market value, whereas that showing is not required for restitution.

76. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Shakes. Injunctive relief is appropriate because Defendant continues to deceptively represent that the Shakes are "all-in-one," contain "everything" the body needs, including "all essential nutrients, vitamins, minerals, & macro[nutrients]," and can function as a "complete" or "comprehensive" meal substitute.

77. Those representations are false and misleading because, as detailed above, the Shakes omit essential nutrients, provide only insubstantial amounts of certain macronutrients, and contain too few calories to function as a complete or comprehensive meal. Plaintiff remains in the market for products that serve as an actual meal replacement with all essential vitamins and nutrients, and Plaintiff would purchase such products from Defendant if she could trust Defendant's marketing representations, but she cannot do so

absent an injunction. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

78. **Permanent public injunctive relief**. Plaintiff also seeks public injunctive relief to protect the general public from Defendant's conduct. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

**COUNT II**

**Violations of California's False Advertising Law ("FAL")**

**Cal. Business & Professional Code § 17500 *et seq.***

**(By Plaintiff, individually and on behalf of the California Subclass)**

79. Plaintiff Weisman incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

80. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

81. The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

82. Defendant violated section 17500 when it advertised and marketed the Shakes through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the Shakes are "all-in-one," contain "everything" the body needs, including "all essential nutrients, vitamins, minerals, & macro[nutrients]," and can function as a "complete" or "comprehensive" meal substitute. In reality, the Shakes omit essential nutrients, provide only insubstantial amounts of certain macronutrients, and contain too few calories to function as a complete or comprehensive meal.

83. Plaintiff reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would

consider whether the Shakes' nutritional content and completeness important factors in deciding whether to purchase the Shakes. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the Shakes.

84. As a direct and proximate result of Defendant's violations of the FAL, Plaintiff and the California Subclass have suffered injury in fact and have lost money. Plaintiff and the California Subclass paid an unwarranted premium for the Shakes and/or were denied the benefit of the bargain.

85. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the Shakes or would have paid substantially less for them.

86. Plaintiff seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the Shakes have no market value, whereas that showing is not required for restitution.

87. Plaintiff also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Shakes. Injunctive relief is appropriate because Defendant continues to deceptively represent that the Shakes are "all-in-one," contain "everything" the body needs, including "all essential nutrients, vitamins, minerals, & macro[nutrients]," and can function as a "complete" or "comprehensive" meal substitute.

88. Those representations are false and misleading because, as detailed above, the Shakes omit essential nutrients, provide only insubstantial amounts of certain macronutrients, and contain too few calories to function as a complete or comprehensive meal. Plaintiff remains in the market for products that serve as an actual meal replacement with all essential vitamins and nutrients, and Plaintiff would purchase such products from Defendant if she could trust Defendant's marketing representations, but she cannot do so absent an injunction. Injunctive relief is therefore necessary to prevent Defendant from

continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

89. **Permanent public injunctive relief**. Plaintiff also seeks public injunctive relief to protect the general public from Defendant's conduct. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

**COUNT III**

**Violations of the California Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code § 1750 *et seq.***

**(By Plaintiff, individually and on behalf of the California Subclass)**

90. Plaintiff Weisman incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

91. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

92. Plaintiff and other California Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

93. The Shakes that Plaintiff (and other similarly situated California Subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

94. By engaging in the actions, representations, and conduct set forth in the Complaint, Defendant has violated, and continues to violate §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA.

95. In violation of § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.

96. In violation of § 1770(a)(7), Defendant's acts, practices, and omissions

constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

97. In violation of § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

98. Defendant's acts, practices, and omissions, set forth above, led consumers to falsely believe that the Shakes are "all-in-one," contain "everything" the body needs, including "all essential nutrients, vitamins, minerals, & macro[nutrients]," and can function as a "complete" or "comprehensive" meal substitute.

99. In reality, the Shakes omit essential nutrients, provide only insubstantial amounts of certain macronutrients, and contain too few calories to function as a complete or comprehensive meal.

100. Plaintiff reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the Shakes' nutritional content and completeness important factors in deciding whether to purchase the Shakes. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the Shakes.

101. Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff and the California Subclass. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the Shakes or would have paid substantially less for them.

102. Plaintiff seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the Shakes have no market value, whereas that showing is not required for restitution. Plaintiff reserves the right to amend the Complaint to seek damages under the CLRA.

103. Plaintiff also seeks injunctive relief in the form of an order enjoining

Defendant from continuing to deceptively market the Shakes. Injunctive relief is appropriate because Defendant continues to deceptively represent that the Shakes are "all-in-one," contain "everything" the body needs, including "all essential nutrients, vitamins, minerals, & macro[nutrients]," and can function as a "complete" or "comprehensive" meal substitute.

104. Those representations are false and misleading because, as detailed above, the Shakes omit essential nutrients, provide only insubstantial amounts of certain macronutrients, and contain too few calories to function as a complete or comprehensive meal. Plaintiff remains in the market for products that serve as an actual meal replacement with all essential vitamins and nutrients, and Plaintiff would purchase such products from Defendant if she could trust Defendant's marketing representations, but she cannot do so absent an injunction. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

105. **Permanent public injunctive relief**. Plaintiff also seeks public injunctive relief to protect the general public from Defendant's conduct. Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

**COUNT IV**

**Unjust Enrichment**

**(By Plaintiff, individually and on behalf of All Classes)**

106. Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

107. Plaintiff and members of the Class conferred a tangible economic benefit on Defendant in the form of monetary payments for Shakes, which were purchased based on Defendant's representations regarding the Shakes' nutritional content and completeness.

108. Defendant knowingly accepted and retained these financial benefits under

circumstances that make such retention unjust. Defendant marketed and sold the Shakes as "all-in-one," as containing "everything" the body needs, including "all essential nutrients, vitamins, minerals, & macro[nutrients]" and as functioning as a complete or comprehensive meal. Those claims were false, misleading, and not substantiated by the actual composition of the Shakes.

109. Plaintiff and members of the Class did not receive the full value of what they paid for. Had they known the truth, Plaintiff and members of the proposed classes would not have purchased the Shakes or would have paid significantly less.

110. It would be inequitable for Defendant to retain the profits from the sale of these deceptively marketed Shakes, as the enrichment was obtained through false and misleading labeling and marketing, omissions of material fact, and a campaign designed to create the false impression that the Shakes delivered "all-in-one" nutrition.

111. Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiff and the class members and will continue to both damage Plaintiff and the class members and deceive the public unless enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of herself, the Class, and the California Subclass as follows:

A. certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as a representative of the Classes, and designating Plaintiff's counsel as Class Counsel;

B. awarding Plaintiff and the Classes compensatory damages and actual damages, to be determined by proof;

C. awarding Plaintiff and the Classes appropriate relief, including actual and statutory damages;

D. for punitive damages;

E. for civil penalties;

F. for injunctive relief on behalf of Plaintiff and the Classes, as well as on behalf of the public;

G. for declaratory and equitable relief, including a declaration that Defendant violated and has continued to violate the UCL, FAL, CLRA and an injunction requiring Defendant to comport with California Business & Professions Code §§ 17200, *et seq.*, and restitution and disgorgement;

H. awarding Plaintiff and the Classes the costs of prosecuting this action;

I. awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

J. awarding pre-judgment and post-judgment interest; and

K. granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for all claims so triable.

Respectfully submitted,

ZIMMERMAN REED LLP

Date: January 12, 2026

By: /s/ Ryan Ellersick

Ryan Ellersick (SBN 357560)
ryan.ellersick@zimmreed.com
6420 Wilshire Blvd.
Suite 1080
Los Angeles, CA 90048
(480) 348-6400

**JANOVE PLLC**

Raphael Janove (SBN 361193)
raphael@janove.law
500 7th Avenue
8th Floor
New York, NY 10018
(646) 347-3940

*Attorneys for Plaintiff and the Proposed Classes*

I, Melissa Weisman, declare:

1. I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2. I submit this Declaration pursuant to California Code of Civil Procedure § 2015.5 and California Civil Code § 1780(d).

3. I reside in San Diego, California. As set forth in my complaint, I purchased Defendant Tribal Nutrition LLC's Ka'Chava Shake from Woot.com.

4. Because I reside in San Diego, the Southern District of California is the proper place for the trial of this action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

01/09/26 — Melissa Weisman (Jan 9, 2026 11:18:21 PST)

Date — Melissa Weisman